IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Elgar Sanchez-Figueroa (S-13549), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 6087 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Dr. Obaisi, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff's claim in this case concerns the medical care that he received at the Stateville Correctional Center in 2017 following a slip and fall. Before the Court is Defendant's motion for summary judgment, which is unopposed. For the reasons set forth below, the motion is granted and judgment will be entered in favor of Defendant, with costs. Defendant's bill of costs is due by September 1, 2020; any objections are due by September 25, 2020. Civil case terminated.

**I.   Background**

   **A.   Northern District of Illinois Local Rule 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The statement . . . shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a). In response, "[t]he opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)).

The sole Defendant in this case, the Estate of Stateville's former Medical Director, Dr. Obaisi, has moved for summary judgment. (Dkt. 57.) Because Plaintiff is a *pro se* litigant, Defendant served Plaintiff with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (Dkt. 60.) The notice explained the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1. Despite the notice, and although Plaintiff received a *sua sponte* extension of time to respond along with a second warning regarding failure to respond (Dkt. 61), as well as the benefit of the extensions of time provided for in General Order 20-0012 and its subsequent amendments (Dkts. 62, 63, 64), he

did not respond to Defendant's Rule 56.1 statements of material facts or motion for summary judgment.

A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Because Plaintiff has neither responded to Defendant's statement of material facts nor opposed his summary judgment motion, the Court will accept Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); L.R. 56.1(b)(3)(C).

### B. Facts

The following facts are set forth as favorably to Plaintiff as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

Plaintiff initiated this case in August 2017. (Dkt. 1.) He alleged the following in his complaint. On January 12, 2017, at Stateville, he fell on ice and severely injured his elbow, wrist, hand, back, and neck. (Dkt. 6, pg. 4.) He was transported by wheelchair to the healthcare unit, where he was seen by non-medical personnel only. (*Id.*) Plaintiff requested at least once every three weeks from January through July 2017 to be seen by medical staff, but the requests were denied. (*Id.*) He has been in constant excruciating pain and cannot sleep. (*Id.*) He named Dr. Obaisi as Defendant, then the Medical Director of Stateville (but now deceased), who, according to Plaintiff, was the only person that could order the necessary diagnostic testing. (*Id.*)

On September 20, 2017, the Court reviewed Plaintiff's complaint under 28 U.S.C. § 1915A and permitted Plaintiff to proceed on a claim for deliberate indifference to his serious medical needs against Dr. Obaisi. (Dkt. 5). The Court simultaneously recruited counsel to represent Plaintiff. (*Id.*) After the recruited attorneys (three lawyers from the firm of Latham & Watkins LLP) engaged in limited expedited discovery related to Plaintiff's medical records, they moved to withdraw in May 2018, given their ethical obligations under Federal Rule of Civil Procedure 11. (Dkt. 21.) This Court allowed counsel to withdraw and found that "in view of the thorough investigation and review conducted by previously recruited counsel" the court would not recruit additional counsel. (Dkt. 23). Nonetheless, in February 2019, this Court did recruit new counsel for Plaintiff due to Plaintiff's inability to speak English. (Dkt. 36). The recruitment of the designated attorney was stricken (Dkt. 41), and the Court recruited a third attorney, Robert W. Maucker, to represent Plaintiff in March 2019. (Dkt. 42). In September 2019, this Court granted attorney Maucker's motion to withdraw. (Dkt. 52.) This Court declined to recruit further counsel to represent Plaintiff because both previously recruited counsel had "concluded that they could not advance the plaintiff's claims without violating ethical norms…." (*Id.*)

Plaintiff was deposed, using an interpreter, in October 2019. (Dkt. 56) Despite the Court's invitation, he did not conduct any discovery in this matter. (*Id.*)

2

He testified as follows at his deposition. Plaintiff has been incarcerated at Stateville since September 2012. (Dkt. 58, Def.'s Stat. of Facts ("SOF") ¶ 8.) He has no formal schooling and does not speak English. (*Id.*) Plaintiff had never seen the sworn Complaint he filed in this case prior to the date of his deposition. (SOF ¶ 21.) An inmate-friend of Plaintiff's, whose name he does not recall, drafted the complaint. (SOF ¶ 22.) Plaintiff's inmate-friend grabbed Plaintiff's hand and told him where to sign. (SOF ¶ 23.) The friend spoke only a little Spanish. (SOF ¶ 24.)

Plaintiff admitted that the majority of the allegations in the complaint are not true: he did not severely injure his elbow, wrist, hand, back, or neck as a result of the January 2017 fall. (SOF ¶¶ 16-19.) He also did not write at least once every three weeks from January 13, 2017 through July 26, 2017 to obtain emergency medical care as a result of the fall. (SOF ¶ 20.)

Instead, as a result of his fall on icy stairs, Plaintiff received scratches on his elbow and two fingers, injuries that healed within ten days. (SOF ¶ 12.) Plaintiff also injured his side in the fall. (*Id.*) While in Stateville's Healthcare Unit ("HCU") following his fall, Plaintiff did not tell the nurse who treated him anything but he allowed her to heal him. (*Id.*) Plaintiff received pills for his pain and was given some cream to apply to his scratches. (*Id.*) Approximately one week later, Plaintiff returned to the HCU and told the physician's assistant, Ms. Williams, that his right side hurt. (SOF ¶ 13.) In response, Ms. Williams, who speaks Spanish, ordered x-rays, which were negative for any fractures. (*Id.*) After being told the results of his x-rays, Plaintiff told Ms. Williams that his side still hurt him, and Ms. Williams scheduled Plaintiff to see the Medical Director, Dr. Obaisi. (*Id.*)

Approximately three days later, Plaintiff saw Dr. Obaisi. (*Id.*) According to Plaintiff, Dr. Obaisi told Plaintiff that if Plaintiff did not speak English, Plaintiff should not come see him. (SOF ¶ 14.) Dr. Obaisi then left the room and "Alma Mia", who speaks Spanish, came in instead and provided Plaintiff with treatment. (*Id.*) "Alma Mia" treated Plaintiff and told Plaintiff that if he has pain he should write his name on the sick call list and return to the HCU for further treatment. (*Id.*) (*Ex. A* p. 48:13- 16). But Plaintiff did not ever again seek any medical treatment whatsoever related to his fall. (SOF ¶ 15.) He sought no treatment despite that Plaintiff testified that he is always able to get medical care at Stateville (by obtaining an HCU pass from a nurse) and that he makes sure to tell whoever is treating him everything that is bothering him. (SOF ¶¶ 26, 27.)

At times during his deposition, Plaintiff testified that he did not seek follow-up because he was in fact "already cured", (*id.*), and at other times he testified that his side still hurt but he did not return because of Dr. Obaisi's prior refusal to treat him on account of their language barrier. (SOF, Ex. A, pg. 49-50.)) Presently, Plaintiff's "waist" still mildly hurts, but in his words, "it's not like this great pain." (SOF, Ex. A, pg. 58.) He experiences this mild pain only when he "get[s] up; it does not hurt when he walks or exercises. (SOF, Ex. A, pg. 58.) For recreation at Stateville, Plaintiff plays soccer and runs for 30 or 40 minutes. (SOF ¶ 25.) He believes that he needs another x-ray to mitigate further damage as he ages. (*Id.*)

## II. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

## III. Discussion

Plaintiff's deposition testimony – *i.e.*, the only actual *evidence* in this case, *see Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013) ("The nonmovant need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must 'go beyond the pleadings' (e.g., produce affidavits (even her own), depositions, answers to interrogatories, or admissions on file).") – establishes that Defendant is plainly entitled to summary judgment.

Under the Eighth Amendment, correctional officials are liable "if they are deliberately indifferent to a prisoner's serious medical needs." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim under § 1983, a prisoner must present evidence showing: (1) an objectively serious medical need and (2) that the defendant was subjectively deliberately indifferent to the need. *See Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)).

Here the Court first concludes that Plaintiff's injuries, while by his account uncomfortable to an extent, were not a potentially serious medical need. "Not 'every ache or pain or medically recognized condition' constitutes a serious medical need." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 2008); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (explaining that "minor aches and pains" do not rise to the level of a serious medical condition). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). "Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not...violate the Constitution.'" *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Cooper*, 97 F.3d at 916).

Plaintiff did not introduce evidence of injuries satisfying this standard. He had no diagnosed trauma or visible injury to his side or waist. And although significant and prolonged pain might itself constitute an objectively serious medical condition, *see Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015); *Perez v. Fenoglio*, 792 F.3d 768, 774, 777–78 (7th Cir. 2015), Plaintiff's pain is "not great," manifests only when he "gets up," did not prompt him to seek treatment over the past two years, and does not prevent him from playing soccer and

4

running for 30-40 minutes intervals. This evidence does not suggest a pain level that would satisfy the objective element of Plaintiff's claim. *See, e.g., Gibson v. Ramsey*, No. 99 C 5315, 2004 WL 407025, at *7 (N.D. Ill. Jan. 29, 2004) (plaintiff who woke up with back pain that was alleviated by Tylenol did not have an objectively serious medical condition); *Watson–El v. Wilson*, No. 08–7036, 2010 WL 3732127 *13 (N.D. Ill. Sep. 15, 2010) (pain treated with over-the-counter medication did not constitute a serious medical need); *Lunsford v. Madison Cty. Jail*, 2012 WL 4904249, at *7 (S.D. Ill. July 23, 2012), *report and recommendation adopted*, 2012 WL 4903956 (S.D. Ill. Oct. 15, 2012) (prisoner who self-reported pain level as "hurting some," and had no outward signs of a noticeable injury did not have a serious medical need); *Green v. Senkowski,* 100 Fed. Appx 45, 46–47 (2d Cir. 2004) (finding that prisoner had not established that he suffered from a serious medical condition where he received only mild, over-the-counter pain medication for his sporadic complaints of wrist pain and was never diagnosed with a chronic or severe wrist condition); *Washington v. Yvette,* 2010 WL 1418590, *4 (W.D. La. Mar.17, 2010) (neck and back complaints that a non-prisoner would treat with at home remedies "ha[d] no constitutional significance"). Thus, although some pain complaints appear in the record, summary judgment is appropriate for Defendant. *See Gonzalez v. Hardy*, No. 11 C 8578, 2015 WL 6528112, at *6 (N.D. Ill. Oct. 27, 2015) (granting summary judgment to defendant doctor where plaintiff had produced only his own opinion that new shoes should give him less pain, without any supporting medical evidence); *Boyce v. McKnight*, No. 14 C 0418, 2015 WL 8778330, at *11 (N.D. Ill. Dec. 15, 2015) (plaintiff's pain complaints alone of lingering effects of pepper spray were not sufficient to show objectively serious medical condition at summary-judgment stage).

But even assuming, for the sake of argument, that Plaintiff had shown an objectively serious medical need, the Court finds that Dr. Obaisi was not deliberately indifferent to that need. *Estelle*, 429 U.S. at 105. The deliberate indifference "standard is a rigorous one," *Lockett*, 937 F.3d at 1023, akin to criminal recklessness, such that medical malpractice, negligence, or even gross negligence do not rise to the requisite culpable state of mind. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 725 (7th Cir. 2017); *Lockett*, 937 F.3d at 1023; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). A prison medical provider is not deliberately indifferent simply because he offers a different course of treatment than the inmate believes was warranted. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Nothing on these facts suggests that Dr. Obaisi's decision to allow a Spanish-speaking medical professional to examine Plaintiff and determine if further care was necessary was unreasonable – let alone reflected callous indifference – given that Plaintiff speaks no English. *See Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) (rejecting medical care claim when an inmate "was under active treatment; no one was ignoring him"). Indeed, the Seventh Circuit has found just the opposite – that failure to address such a language barrier can amount to deliberate indifference:

> An impenetrable language barrier between doctor and patient can readily lead to misdiagnoses and therefore unnecessary pain and suffering. This type of language problem which is uncorrected over a long period of time and as to which there is no prospect of alleviation, can contribute to unconstitutional deficiencies in medical care.

5

*Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983). (It is not clear if "Alma Mia" was a physician, technician, nurse, *etc.*, but the Court does note as a matter of public record that it is aware from other prisoner litigation in this District that a *physician* named Dr. Alma Martija treated prisoners at Stateville at the time of the complained-of events.) Plaintiff, it seems, would have preferred to see Dr. Obaisi instead of "Alma Mia", but nothing in the evidence submitted suggests that his condition was such that attention by no one less than the Medical Director was medically warranted, even with the language barrier. After all, at the time of the appointment, although Plaintiff complained of pain in his side, he had already received x-rays that were negative for fractures. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (holding that because a correctional institution must provide "adequate medical care," not "unqualified access to healthcare," inmates are not entitled to receive the treatment of their choice on demand).

Plaintiff also cannot hold Dr. Obaisi liable for events that happened after the appointment. Nothing suggests that Dr. Obaisi had any further personal knowledge of Plaintiff's case – a threshold showing for a finding of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1988) (to be deliberately indifferent prison personnel must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) (considering whether defendant "actually comprehended the extent of [the inmate's] pain and consciously disregarded the risk it posed"). Given Plaintiff's testimony that he did not seek further treatment for his injuries after his meeting with "Alma Mia", the Court certainly cannot conclude that Dr. Obaisi (or any other medical professional, for that matter) was aware that his pain persisted and "knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

For all these reasons, Defendant's motion for summary judgment is granted. Final judgment will enter. If Plaintiff wants to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1). Any such motion must specify the issues that Plaintiff intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

## IV. Conclusion

Defendant's motion for summary judgment [57] is granted. Final judgment in favor of defendant, with costs, will be entered. Defendant's bill of costs is due by September 1, 2020; any objections are due by September 25, 2020.

      If Plaintiff seeks to appeal the final judgment entered in this matter, he must (absent a basis to extend the time to appeal) file a notice of appeal with this Court within thirty days of the entry of the Judgment on the docket. *See* Federal Rule of Appellate Procedure 4(a). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal so that he may pay the appellate filing fee in installments, he must file a motion seeking leave to do so in this Court. *See* Fed. R. App. P. 24(a)(1). Any such motion must include sufficient information to support the claim of indigency and a statement of the intended grounds for appeal.

Dated: 8/7/2020

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge